UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kevin Esping,                                      Civil No. 17-872 FLN

    Plaintiff,

    v.                                         **ORDER**

Nancy A. Berryhill,
Acting Commissioner of Social Security,

    Defendant.

---

David D. Chermol and Edward C. Olson for Plaintiff.
Bahram Samie, Assistant United States Attorney, for Defendant.

---

Plaintiff Kevin Esping seeks judicial review of the final decision of Nancy Berryhill the former Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied his applications for disability and disability insurance benefits under Title II of the Social Security Act, and supplemental security income under Title XVI of the Social Security Act. ECF No. 1. This Court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross motions for summary judgement. *See* ECF Nos. 16 and 18. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

## I. INTRODUCTION

Esping applied for disability insurance benefits on December 9, 2013, and supplemental security income on November 7, 2013. Administrative Record [hereinafter "AR"] 19, ECF No. 15. In both applications, Esping alleged his disability began on November 18, 2012. AR 19. Esping's

applications were denied initially on April 1, 2014, and upon reconsideration on November 6, 2014. *Id*. An administrative hearing was held before Administrative Law Judge ("ALJ") Peter Kimball on November 19, 2015. AR 19, 38–89. The ALJ found Esping was not disabled and denied Esping's applications for disability insurance benefits and supplemental security income on January 20, 2016. AR 16–37. On January 25, 2017, the SSA Appeals Council denied Esping's request for review and finalized the ALJ's decision. AR 1–6; *see* 20 C.F.R. § 404.981. On March 22, 2017, Esping commenced this civil action seeking reversal of the ALJ's decision, or in the alternative, remand for further proceedings. ECF No. 1 at 3.

## II. FINDINGS OF FACTS

### A. Background

Esping was fifty-two years old, an individual closely approaching advanced age, when he filed his applications for disability insurance benefits and supplemental security income. AR 231–40; 20 C.F.R. § 404.1563(d). Esping has at least a high school education and past relevant work as a crew chief at the Renaissance Festival. AR 28, 30, 47–49. Esping claims the following severe impairments prevent him from securing and maintaining competitive employment: carpal tunnel syndrome (CTS), migraines, left and right total hip replacement, torn rotator cuff in right shoulder, pinched nerve, herniated disc, depression, anxiety, asthma, and attention deficit hyperactivity disorder (ADHD). AR 22, 259.

### B. The Administrative Hearing

An administrative hearing was held on November 19, 2015. AR 38. Attorney Carrie Burton represented Esping, who testified on his own behalf. AR 38, 40–73. Vocational Expert ("VE")

Beverly Solanchez, and Medical Expert ("ME") Joseph Hornacki also testified at the hearing. AR 38, 40, 73–89.

**1. VE Testimony**

The VE testified that Esping's past relevant work as a crew chief was more accurately described as a "parts runner." AR 81. The VE explained that a parts runner typically distributes items, and stocks the kitchen at the renaissance festival. AR 81–82. The VE also testified that while Esping was a supervisor that he still "did the job" himself. AR 83. The ALJ then posed the following hypothetical to the VE:

> Consider an individual of the same age, education, and vocational academic background as the claimant and with the following restrictions: this person would be able to lift and carry 20 pounds occasionally and 10 pounds frequently, is able to sit for six hours out of an eight hour day, stand and/or walk for two hours out of an eight hour day, push and pull as much as can lift and carry. There would be no power gripping, twisting, or torqueing with either hand. There would be no reaching overhead, bilaterally. There could be no more than frequent reaching in all other directions. There'd be no more than frequent handling or fingering on both sides. There'd be occasional climbing of ramps and stairs, no climbing of ladders or scaffolds, and no balancing. And for less than one sixth of the day, the individual would be able to stoop, kneel, croach, and crawl. There'd be no work involving exposure to unprotected heights or moving mechanical parts and only occasional exposure to dust, odors, fumes, and pulmonary irritants. For walking longer distances, more than 20 feet, a cane could be used in the right hand. And finally, the work would, in terms of understanding and remembering and carry out instructions, the work would be limited to performing simple and routine tasks. All right, based on those restrictions, could a hypothetical individual perform the past work that's been identified.

AR 84–85.

The VE responded that an individual with the residual functional capacity described in the hypothetical would not be able to perform the past work identified in the Esping's work history. AR 85. The VE, however, went on to identify three unskilled jobs—as defined in the Dictionary of Occupational Titles ("DOT")—that existed in the national economy that Esping could, in fact,

3

perform. AR 85, 87. The VE identified bench assembler, with approximately 5,000 positions available in Minnesota; collator operator, tender, with approximately 2,000 positions available in Minnesota; and electronics worker, with approximately 3,700 positions available in Minnesota. AR 85–87. The VE testified that each of these jobs qualified as light work, had a sit/stand option, and did not require any overhead reaching or walking long distances. AR 86. The VE testified that all three jobs fit within the RFC suggested in the first hypothetical. *Id.*

The ALJ then posed another hypothetical to the VE whereby the same individual would be further limited to lifting no more than 10 pounds occasionally and less than 10 pounds frequently. AR 87. The VE opined that the second hypothetical would take the residual functional capacity beyond light work and into the sedentary category for lifting, and thus, under that classification, the hypothetical person could no longer perform the above three listed jobs nor Esping's past relevant work. *Id.*

### 2. **The Commissioner's Decision**

On January 20, 2016, the ALJ issued a decision that Esping was not disabled and not entitled to benefits. AR 16–32. In determining that Esping was not disabled, the ALJ followed the five-step sequential process established by the SSA. *See* 20 C.F.R. § 404.1520(a)(4).

The first step in the sequential evaluation is to evaluate the claimant's work history to see if they are engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.15071, 416.971. If the claimant has performed substantial work activity then he is not disabled. *Id.* At step one, the ALJ found that Esping had not engaged in substantial gainful activity since November 18, 2012, the alleged onset date of his disability. AR 21. The ALJ also noted that Esping's earning records

4

indicated that he had earned $16,748.64 in 2012, and $0 in 2013, 2014, and 2015, further indicating a lack of substantial gainful activity. *Id.*

The second step in the sequential evaluation is to determine whether the claimant has a severe, medically-determinable impairment, or combination of impairments, that significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step two, the ALJ found that Esping had the following severe impairments: anxiety disorder; asthma; attention deficit hyperactivity disorder (ADHD); bilateral carpal tunnel release surgery in 2014; bilateral hip pain secondary to bilateral arthroplasty and tendinopathy; bilateral shoulder pain, with the left greater than right, secondary to rotator cuff disease and status post left shoulder surgery in December, 2012; gouty arthritis; major depressive disorder; and obesity. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); AR 22.

The third step in the sequential evaluation requires the ALJ to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If, at this step, the ALJ finds that the claimant's impairments or combination of impairments does not meet or medically equal the criteria of a listing, nor meet the duration requirement, then the analysis must proceed to the next step. At this step, the ALJ found that Esping did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 22.

Because Esping's impairments do not meet or equal one of the listings in Appendix 1, the ALJ had to make an assessment of the his Residual Functional Capacity ("RFC"). Here, the ALJ concluded that Esping had an RFC to:

> [l]ift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours out of an 8-hour day; stand and/or walk 2 hours out of an 8-hour day; push and pull

5

> as much as able to lift and carry. In addition, [Esping] is restricted to no power gripping, twisting or torqueing with either hand; no reaching overhead bilaterally; no more than frequent reaching in all other directions and no more than frequent handling and fingering on both sides; occasional climbing up ramps and stairs; no climbing of ladders or scaffolds; no balancing; for less than one-sixth of the day [Esping] is able to stoop, kneel, crouch, or crawl; no work involving exposure to unprotected heights or moving mechanical parts; only occasional exposure to dust, odors, fumes, and pulmonary irritants; and for walking longer distances, meaning distances greater than 20 feet, [Esping] could use a cane in the right hand. In terms of understanding, remembering, and carrying instructions, the work is limited to performing simple and routine tasks.

AR 24.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either his past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1512(g), 404.1520(f), 404.1560(c), 416.912(g), 416.920(g), 416.960(c). If the claimant cannot perform his past relevant work, then the "burden shifts to the SSA to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Esping was not able to perform his past relevant work. AR 30. This determination was based on the VE's testimony that an individual with Esping's RFC would be unable to perform his past relevant work as a crew chief at the Renaissance Festival. *Id*.

At step five, however, the ALJ concluded that considering Esping's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that he could perform. AR 31. But the ALJ found that Esping's ability to perform a full range of light work was impeded by additional limitations. *Id.* As a result, the ALJ sought testimony from the VE to

determine the extent to which Esping's limitations eroded his ability to perform light work. *Id.* The VE testified that Esping could perform light work such as bench assembler, collator, operator tender, and electronics worker because these jobs provided for a sit/stand option based on her experience and observations. *Id.* The ALJ found her testimony persuasive, her explanations reasonable, and her opinions consistent with the information contained in the DOT. *Id.* Moreover, the ALJ found that the evidence in the record was not consistent with limiting Esping to sedentary work. AR 32. As a result, the ALJ concluded that Esping was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and thus was not disabled. *Id.*

## III. STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Quals v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial

evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome. . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Therefore, this Court's review of the ALJ's factual determinations is deferential, and does not re-weigh the evidence nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th. Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th. Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. CONCLUSION OF LAW

Esping asks the Court to reserve the ALJ's decision, and to remand the matter for immediate payment of benefits. ECF No. 17 at 4. According to Esping, the ALJ's RFC determination, by definition, limited him to sedentary work and not light work and, under Medical vocational Guidelines, the ALJ should have found him disabled as a matter of law. *Id*. Additionally, Esping argues that the ALJ committed reversible legal error when he failed to follow the SSA's binding Program Operational Manual System ("POMS") Rule DI 25025.015(D). *Id.* The Commissioner asks the Court to affirm the ALJ's determination because substantial evidence on the record as a whole supports the ALJ's decision. *See generally* ECF No. 19. More specifically, the Commissioner argues that the ALJ properly found that Esping could perform a reduced range of light exertional work, and properly relied on the VE's testimony that Esping could perform work existing in significant numbers in the national economy. *Id.*

### 1. The Medical Vocational Guidelines ("Grid") and Esping's Exertional Capacity

Esping argues that his RFC, by definition, limits him to sedentary work, and requires a finding of disability as a matter of law. ECF No. 17 at 5. The Commissioner, in turn, argues that Esping's RFC actually falls in the middle of light work and sedentary work, and as such, the ALJ was correct in relying on the VE's testimony to conclude that Esping was capable of performing light work with sit and stand options. *See generally* ECF No. 19. Because SSA regulations, and the record as a whole, substantially supports the ALJ's finding and the Court finds that the ALJ did not commit legal error, the ALJ's decision is affirmed.

In general, a claimant bears the burden of showing that he or she is disabled under the Social Security Act. 20 C.F.R. § 404.1512(a); *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007). If the

Commissioner finds that the claimant cannot return to his past relevant work, however, the burden shifts to the Commissioner to prove that the claimant retains the ability to do other kinds of work that exist in significant numbers in the national economy, and which is consistent with the claimant's age, education, and work experience. *Coleman*, 498 F.3d at 770; *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001).

> If an applicant's impairments are exertional (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the medical vocational guidelines or "grids," which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairments.

*Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998); 20 C.F.R, § 404.1569; 20 C.F.R. § 404, Subpt. P, App. 2, §§ 200.00–204.00. If however, the claimants exertional capacity is somewhere in the middle of two medical-vocational guidelines, the ALJ is to use the Grid only as a framework, and should consult a vocational source. *See* SSR 83-12, 1983 WL 31251 at *3.

Additionally, the SSA classifies jobs in the national economy as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The classifications are based on the physical exertion requirements of jobs in each classification. *Id*. Sedentary work is defined as "work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id*. In contrast, light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*

> Even though the weight lifted may be very little, a job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work . . . he or she can also do sedentary work, unless there are additional limiting facts such as loss of fine

dexterity or inability to sit for long periods of time.

*Id.* "Occasionally" is defined as occurring from very little up to one-third of the time, *see* SSR 83-10, 1983 WL 31251 at *5, and "frequently" is defined as occurring from one-third to two-third of the time. *Id.* at *6.

Grid Rule 201.14 directs a conclusion of disabled for an individual closely approaching advanced age, with a high school education, and no transferable skills, who is found to be capable of performing sedentary work. *See* 20 C.F.R. § 404, Subpt. P, App. 2, § 201.14. Conversely, Grid Rule 202.14 directs a conclusion of not disabled if the same individual is assessed to be capable of performing light work.[1] *Id.* at § 202.14. Therefore, the crux of this matter is whether the ALJ erred in his determination that Esping was capable of performing light work instead of sedentary work.

In the present case, the ALJ found that Esping could: (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) sit for 6 hours out of an 8-hour workday; (3) stand and/or walk 2 hours out of an 8-hour workday; and (4) push and pull as much as he was able to lift and carry. AR 24. Based on this, the ALJ concluded that Esping could perform light work, but had additional limitations. AR 31. The ALJ, after consulting with the VE, determined that there were light work with sit/stand options available in the national economy for someone Esping's age, with his education, work experience, and RFC. AR 31–32. As such, the ALJ determined that Esping was not disabled. AR 32.

The ALJ's finding that Esping can carry 20 pounds occasionally, and 10 pounds frequently, is consistent with light work. However, the limitation that Esping can only stand and/or walk for 2 hours out of an 8-hour work day is inconsistent with light work, and is more consistent with

---

[1] The parties do not dispute this conclusion.

11

someone who is capable of sedentary work. Thus, while Esping cannot perform the full range of light work, he can perform more than just sedentary work, and accordingly, the Court finds that there is substantial evidence that Esping's RFC falls somewhere in the middle of light work and sedentary work.[2]

SSR 83-12 provides that in situations where an individuals exertional limitations are somewhere in the middle of two exertion classifications, the ALJ should consult a vocational source. *See Coleman v. Berryhill*, 2017 WL 6407476 at * 3 (E.D. Mo. Dec. 15, 2017) (providing that when a claimants exertional RFC does not match perfectly with the definition of any one of the ranges of work, the ALJ should use the Grid as a framework and elicit VE testimony). Therefore, we find the ALJ properly consulted with the VE in determining whether there was light work jobs in the national economy for someone with Esping's RFC, age, education, and work experience. And because the VE testified Esping would be able to perform light work of bench assembler, collator, operator tender, and electronics worker, we find that the ALJ's decision that Esping was not disabled is not legal error, and is supported by substantial evidence in the record.

### 2. POMS DI 25025.015(D)

Esping also argues that the ALJ violated POMS DI 25025.015(D) when the ALJ applied Grid Rule 202.14, even though Esping had a significantly reduced capacity for light work. ECF No. 17 at 11. The Commissioner in turn argues that POM DI 25025.015(D) addresses two extremes

---

[2] Esping cites to several cases remanding where a claimant was found capable of performing a reduced range of light work when the claimant could not stand and/or walk more than 2 hours in an 8-hour work day. Not only are these cases not binding on this Court, the only case in this circuit which has considered facts similar to ours has found that the ALJ's error was harmless, and the VE's testimony provided substantial evidence that the claimant was not disabled. *See Coleman*, 2017 WL 6407476 at * 6.

situations, neither of which is present in this case, and the ALJ was correct in relying on the testimony of the VE and determining that Esping was not disabled.. ECF No. 19 at 13.

"Although POMS guidelines do not have legal force, and do not bind the Commissioner, [the Eighth Circuit] has instructed that an ALJ consider the POMS guidelines." *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003). POM DI 25025.015(D) provides:

> [d]etermining whether a claimant is disabled is a more difficult judgment when his or her exertional capacity falls in the middle of two rules and the rules direct opposite conclusions. In this situation apply the:
>
> • higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or
> • lower-numbered rule and find claimant disabled if you conclude the claimant has a significantly reduced capacity for the higher level of exertion.
>
> NOTE: Use the information about the sedentary, light and medium occupational bases found in the Medical-Vocational Quick Reference Guide in DI 25001.001 to assist you with this adjudicative judgment.

POM DI 25025.015(D) does not address the situation when a claimant's reduced capacity is neither slightly reduced, nor significantly reduced, but somewhere in the middle, as in this case. As discussed above, Esping's limitations are consistent with both light work (lifting more than 20 pounds), and sedentary work (standing and/or walking 2 hours in an 8-hour work day), putting Esping's exertional capacity somewhere in the middle. AR 24. In this situation, POMS DI 25025.015(D) does not provide guidance to the ALJ. *See Coleman*, 2017 WL 6407476 at * 8 (quoting *Sankhar v. Coleman*, 2015 WL 5664285 at * 7 (D. Or. Sept. 21, 2015)). Instead, SSR 83-12 informs the ALJ's decision, which provides that in situations where the exertional capacity is somewhere in the middle of two Grid Rules that the ALJ should consult with a vocational source.

*See* SSR 83-12, 1983 WL 31253 at *2–3. Therefore, because the ALJ properly sought VE testimony, the ALJ did not violate POM DI 25025.015(D).

Additionally, Esping argues that remand is warranted because the ALJ violated POMS DI 25025.015(D) by failing to provide an explanation of why he applied light work Grid Rule 202.14, rather than sedentary work Grid Rule 201.14. *See* ECF No. 17 at 12. The Commissioner asserts that the only obligation under POMS DI 25025.015(D) is that the ALJ explain the basis for his conclusion, which he has, and thus remand is not warranted. *See* ECF No. 19 at 13.

POMS DI 25025.015(D) states that the ALJ is to "[a]lways explain the basis of [his] conclusions" and "[i]f necessary, use the assistance of a Vocational Specialist to determine which rule most closely approximates the claimant's RFC and vocational factors . . . ." Here, the ALJ explained that Esping was not able to perform all or substantially all of the requirements of light work because his ability to do so was impeded by additional limitations. AR 31. Reasoning in part that:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. [Thus] [t]o determine the extent to which these limitations erode the unskilled light occupational base, I asked [the VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

*Id*. The ALJ then went on to discuss the VE's testimony, whereby the VE testified that Esping could perform the light work jobs of bench assembler, collator, operator tender, and electronics work because they provided for a sit/stand option. *Id*. The ALJ then stated that he found the VE's explanations reasonable, and her testimony persuasive and consistent with the DOT. *Id.* Finally the

ALJ concluded that there was work in significant numbers in the national economy for someone with Esping's age, education, work experience, and residual functional capacity, and as such Esping was not disabled. AR 31–32. Based on this, the Court finds that the ALJ complied with POMS DI 25025.015(D), and no additional explanation was necessary.

## V. CONCLUSION AND ORDER

If the ALJ's decision is supported by substantial evidence on the record, this Court cannot reverse simply because "substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig*, 212 F.3d at 436). Here, substantial evidence supports the ALJ's finding that Esping is not disabled, and the Court finds that the ALJ did not commit any legal error. Accordingly, the Commissioner's decision denying Esping's benefits is affirmed.

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Esping's Motion for Summary Judgement (ECF No. 16) is **DENIED**;
2. Defendant's Motion for Summary Judgement (ECF No. 18) is **GRANTED**;
3. The Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

**LET JUDGEMENT BE ENTERED ACCORDINGLY.**

DATED: July 11, 2018                          *s/Franklin L. Noel*
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge